# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Jan 18, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the dates, times, and geographical boundaries listed in Attachment A. | ) ) ) ) ) ) ) Case No. 24 MJ 29 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) and 2(a) & 18 U.S.C. § 924(c)(1)(A)(ii). | Hobbs Act robbery and brandishing a firearm during a crime of violence. |

The application is based on these facts:
See attached Affidavit.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Martin Keck, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 01/18/2024

*Judge's signature*

City and state: Milwaukee, WI

Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Martin Keck, being first duly sworn on oath, on information, and belief state:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for records and information associated with certain cellular towers ("cell towers") and records generated by the cellular networks that are in the possession, custody, and/or control of T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054; US Cellular, a cellular service provider headquartered at 8410 W. Bryn Mawr Ave, Chicago, IL; and AT&T, a cellular service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. §2703(c)(1)(A) to require T-Mobile/US Cellular/AT&T to disclose to the government copies of the information further described in Attachment B.

2. I am currently employed as a Detective for the Wauwatosa Police Department. I have been employed as a law enforcement officer for over sixteen years. Since October 2018, I have been assigned as a federally deputized Task Force Officer (TFO) on the Federal Bureau of Investigation (FBI) Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies (carjackings), and other violent crime matters, defined under Title 18 of the United States Code. I have participated in the investigation of numerous violent crimes, including armed bank robberies, armed motor vehicle robberies, and armed commercial robbery investigations in violation of Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and 2, and other related offenses. I have been trained in a variety

1

of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, cellular telephone extractions, interviews, DNA collection, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3. This affidavit is based on my training, experience, personal knowledge, and observations in this investigation; upon my discussions with other law enforcement officers and agents involved in this investigation; and, upon my review of official reports submitted in relation to this investigation.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 1951(a) and 2(a) (Hobbs Act robbery) and 924(c)(1)(A)(ii) (brandishing a firearm during and in relation to a crime of violence) were committed by an unknown individual, as described below. There is also probable cause to search the information described in Attachment A for evidence of this crime as further described in Attachment B.

## PROBABLE CAUSE

6. On Saturday, December 30, 2023, at 8:17pm, Village of Butler Police Officer Knapp responded to the Amoco gas station, located at 12419 W. Hampton Ave., in the Village of Butler, in the Eastern District of Wisconsin, for a report of an armed robbery that had just occurred.

The Amoco gas station was a business involved in interstate commerce and the below-described robbery affected interstate commerce.

7. Upon his arrival, Officer Knapp spoke to the victim, who is employed as a clerk at the gas station and identified as D.C.M. D.C.M. stated that at approximately 8:10pm, a black male in his late 20s to early 30s, approximately 6'00" tall and weighing approximately 215 pounds entered the gas station. The suspect asked D.C.M. about an item and then pulled out a black handgun and stated, "Give me all the money, no, hurry up or I'll pop you." D.C.M. complied and gave the suspect all of the money from the register. A total of approximately $1,162 was taken without consent.

8. The robbery was captured on video cameras located at the Amoco gas station. The video shows the suspect pointing a black semi-automatic handgun at the victim during the robbery.

9. I searched the address 12419 W. Hampton Ave., Butler, Wisconsin, and found the GPS coordinates for the gas station are Latitude 43.104499, Longitude -88.066920.

10. On Friday, January 12, 2024, at approximately 6:56pm, the Walgreens located at 7171 N. Teutonia Ave., in Milwaukee, Wisconsin, was robbed. Milwaukee Police Det. Michael Lees responded and investigated the robbery. The Walgreens was a business involved in interstate commerce and below-described robbery affected interstate commerce.

11. Det. Lees spoke to the victim, M.T., who is employed as a Customer Service Associate at Walgreens. M.T. stated the suspect that ultimately robbed her first came into the store at 5:42pm. M.T. described the suspect as a black male 6'00" to 6'01" tall, with a thin build. M.T. stated the suspect had facial hair and was wearing a black sweatshirt with a red hood, red and white chevron on the elbows and "Chicago" written on the chest. The suspect was wearing black pants and black gloves. The suspect asked M.T. about loading money onto a gift card and then left. At

approximately 6:52pm, the suspect returned to M.T.'s register and stated he wanted to load the gift card. When asked how much money the suspect wanted to put on the gift card he stated $5 and gave M.T. money. When M.T. opened the register, the suspect displayed a black semi-automatic handgun, pointed it at her and stated, "Give me everything!" M.T. began giving the suspect money from the register and the suspect himself reached over into the register and took money. The suspect then ran out of the store to the alley behind the store. A total of $319.02 was taken without consent.

12. The robbery was captured on video cameras located at the Walgreens. I viewed still images form the robbery which occurred at the Walgreens on January 12, 2024, and compared them with images of the suspect that robbed the Amoco on December 30, 2023. I found the suspect to appear to be the same person. The suspect was wearing what appeared to be the same hat and had the same type of black gloves on. The suspect's face is unmasked and clear images of his face were captured in both incidents.

13. At this point in the investigation, the suspect has not been identified.

14. I searched the address 7171 N. Teutonia Ave., in Milwaukee Wisconsin, and found the GPS coordinates for the location are Latitude 43.147844, Longitude -87.957170.

15. Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

16. On January 5, 2024, I obtained a search warrant through the United States District Court - Eastern District of Wisconsin for the tower dump / area search records related to the Amoco gas station robbery, which occurred on December 30, 2023. The warrants were served on the

4

cellular service providers and I am still awaiting to receive all of the records from the providers. This affidavit is a supplemental to the warrant signed on January 5, 2024, and I am now requesting the records from the cellular service providers related to the Walgreens robbery which occurred on January 12, 2024.

## TECHNICAL INFORMATION

17. In my training and experience, I have learned that T-Mobile/US Cellular/AT&T are companies that provides cellular communications service to a significant percentage of the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it. Additionally, cellular service providers such as T-Mobile, US Cellular, and AT&T also capture historical location data that is generated and derived from a cellular device's interaction with the cellular network. This information may include but not be limited to a cellular device's distance from a particular cell tower and network derived location, which are generally estimates, of the device in latitude and longitude.

18. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile

Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

19. Based on my training and experience, I know that cellular providers such as T-Mobile/US Cellular/AT&T in their regular course of business maintain certain types of location data associated with a cellular device based on that cellular device's interaction with the cellular network. For these interactions with the cellular network these records may include unique identifiers for the wireless device that interacted with the network ("the locally served wireless device'); the date, time and duration of the interaction with the network; the cell tower and sector (i.e. face of the tower) that was involved; the distance from the tower and sector that the cellular device was located; and the estimated latitude and longitude of the cellular device. The aforementioned location information is often contained within Timing Advance data, also known as True Call, and/or LOCDBOR data that is captured and controlled by T-Mobile/US Cellular/AT&T.

20. Furthermore, I also note that information about each transaction, such as the originating and destination phone numbers, duration, date/time, and tower/sector utilized for voice and text communications is also retained in the normal course of business and can be provided in response to this warrant. I note that US Cellular is the provider that will provide voice and text activity in response to an area search based on their processing of the request. The information provided by US Cellular is limited to only the cell sites that are identified within the initial area search parameters.

21. I note that that in speaking with experts in the field of historical call detail record analysis that the estimated latitude and longitudes of a device on the AT&T network can be sourced from multiple inputs that may vary largely in their accuracy. Due to these estimations, a larger search area is being requested due to these variances in the accuracy.

22. I note that while the search radius will be larger for AT&T due to the source of the data as noted above, that the analysis will only look for those devices consistent amongst multiple locations and/or consistent with the facts of the crime. Additionally, this information will not be utilized for any further purpose outside the authorization within this warrant.

23. I know that an "area search" is a term used to obtaining records regularly maintained by the electronic communication service providers through the course of normal business practices and that the records are available to law enforcement through the proper legal demand. An "area search" can be conducted with a smaller search radius than a "tower dump" due to the type of records being queried. While a smaller search radius is used, the information being queried is still based on "estimated locations" of the cellular devices by the network and is not a finite GPS location, and should not be treated as such. Estimated locations can vary based on the network environment, sources of the location estimate, and any data points used by the cellular provider to calculate the location estimate. Specifically, AT&T cell sites are generally less dense than T-Mobile. That in addition to using other inputs that vary widely in accuracy result in a larger search area being requested while still being specific and focused to identify devices within the areas of the specific locations. In summary, the distance provided in this warrant is based upon a review of the cellular network and discussion with experts in the field who have experience requesting and analyzing this information and are used to only identify those cellular accounts whose records would be consistent with being in the area of the location.

7

Case 2:24-mj-00029-WED   Filed 01/18/24   Page 8 of 13   Document 1

24. I note that this warrant does not authorize any additional account information (including basic subscriber or additional location information) and any further information will be requested via additional legal process.

25. Furthermore, I note that many returns may only have unique account identifiers (such as an IMSI) which are unable to be searched by law enforcement or attributed to an individual user without additional legal process. Additionally, even if a phone number is provided, I note that identifying the actual user of the device may require additional legal process since additional records outside of the initial search parameters are not authorized within this warrant.

26. Based upon my experience, I believe that this cell site information can assist in identifying a cellular phone, or multiple cellular phones associated with the crime being investigated. The information for the specific accounts will vary in accuracy; the location information will not be precise GPS location data but more likely a general area. That area could range from a few square blocks to several square miles.

27. Based upon my experience, records associated with the area for an extended period of time prior to and following the crime being investigated is required to fully analyze the relevancy of devices found to be in the area. By obtaining information of the devices in the area prior to the crime and after the crime, the one analyzing the records is able to eliminate devices that are native to the area of where the crime occurred.

28. Based on my training and experience and the above facts, information obtained from cellular service providers, such as T-Mobile/US Cellular/AT&T, reveal cell towers (and, where applicable, sectors) that were used and the estimated location information (the distance from the tower and sector and estimated latitude and longitude) of a given cellular device engaged in a particular communication or interaction with the cellular network can be used to show that the

device was in the general vicinity of the cell tower or an estimated location at the time the communication or network interaction occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of:

    a. Location #1: 7171 N. Teutonia Ave., Milwaukee, WI
       Latitude 43.147844, Longitude -87.957170

## AUTHORIZATION REQUEST

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to title 18 U.S.C. §2703(c) and Federal Rule of Criminal Procedure 41.

30. I further request that the Court direct T-Mobile/US Cellular/AT&T/Verizon to disclose to the government any information described in Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile/US Cellular/AT&T/Verizon, who will then compile the requested records at a time convenient to it, reasonable cause to permit the execution of the requested warrant at any time in the day or night.

31. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving the target(s) an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

9

Case 2:24-mj-00029-WED    Filed 01/18/24    Page 10 of 13    Document 1

# ATTACHMENT A

## Property to Be Searched

This warrant applies to a Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the following listed dates, times and geographical boundaries (*distance from the GPS points*) of **0.35 Miles** (T-Mobile/US Cellular) and **0.60 Miles (**AT&T):

**Location #1**

GPS Coordinates: Latitude 43.147844, Longitude -87.957170

Date: 01/12/2024  Time: 5:30pm – 7:30pm (CST)

# ATTACHMENT B

## Items and Information to be seized and searched

All information that constitutes evidence of violations of Title 18, United States Code, Sections 1951(a) and 2(a) (Hobbs Act robbery) and 924(c)(1)(A)(ii) (brandishing a firearm during and in relation to a crime of violence), committed on January 12, 2024, at 6:52pm, involving an unknown individual, including location information and identifying information as specified below.

1. T-Mobile/US Cellular/AT&T shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

    a. The unique identifiers for each wireless device that generated a Timing Advance "true call" record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI", International Mobile Equipment ("IMEI"), and the make and model of the device;

    b. The starting and ending date/time of the connection along with the duration, originating/terminating phone numbers, and type of communication (voice/text/data);

    c. For each communication with the network, the tower and the sector(s) (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

    d. The service type for the communication; and;

    e. The estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call", LOCDBOR records, or similar.

11

2. These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.
3. It is anticipated that identifying information will be requested for devices whose characteristics meet any of the following criteria:
    a. Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and would not solely reflect a device passing through.
4. However, it is noted that no subscriber information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.